GENERAL MOTORS CORPORATION,
d/b/a Chevrolet, GMC, Cadillac, Buick, and Oldsmobile *v.*
Boyd BRYANT, on Behalf of Himself and all Others
Similarly Situated

07–437                                                285 S.W.3d 634

Supreme Court of Arkansas
Opinion delivered June 19, 2008

*Jones, Walker, Waecher, Poitevent, Carrère & Denère, LLP*, by: *David G. Radlauer* and *Thomas A. Casey, Jr.*; *Haltom & Doan*, by: *Darby v. Doan* and *James N. Haltom*; and *Friday, Eldredge & Clark, LLP*, by: *William A. Waddell, Jr.*, for appellant.

*Patton, Roberts, McWilliams & Capshaw, LLP*, by: *James C. Wyly* and *Sean F. Rommel*; *Baily/Crowe & Kugler, LLP*, by: *John W. Arnold*; and *Cullen & Co., PLLC*, by: *Tim Cullen*, for appellees.

*National Chamber Litigation Center, Inc.*, by: *Robin S. Conrad*; *O'Melveny & Myers, LLP*, by: *John H. Beisner, Jessica Davidson Miller*, and *Shannon M. Pazur*; and *Watts, Donovan & Tilley, P.A.*, by: *David M. Donovan*, counsel for amicus curiae Chamber of Commerce of the United States of America.

*Quattlebaum, Grooms, Tull & Burrow, PLLC*, by: *Steven W. Quattlebaum* and *Michael N. Shannon*, counsel for amicus curiae Product Liability Advisory Council, Inc.

PAUL E. DANIELSON, Justice. Appellant General Motors Corporation d/b/a Chevrolet, GMC, Cadillac, Buick, and Oldsmobile appeals interlocutorily from the circuit court's order granting class certification to appellee Boyd Bryant, on behalf of himself and all other similarly situated persons. General Motors asserts four points on appeal: (1) that extensive legal variations in state laws defeat predominance; (2) that extensive factual variations in the millions of claims defeat predominance; (3) that class certification is not superior under Arkansas Rule of Civil Procedure 23(b); and (4) that the class definition is imprecise and overbroad. We affirm the circuit court's order granting class certification.

On September 5, 2006, Bryant filed a first amended class-action complaint in which he alleged that some 4,000,000 pickup trucks and sport utility vehicles sold by General Motors were equipped with defectively designed parking brakes. Specifically, Bryant alleged that the vehicles, model years 1999 through 2002:

> contain parking brakes whose linings, due to a defectively designed high force spring clip, do not adequately float inside the parking brake drums. This failure, alone, is problematic and harms Plaintiff and Class members. But inadequate lining float, by GM's own admission, also causes the parking brakes to "self-energize" and experience excessive lining wear after only 2,500 to 6,000 miles in use.

Bryant alleged that General Motors discovered the defect in late 2000, redesigned the defective spring clip in October 2001, and withheld from dealers admission of responsibility for the defect until January 28, 2003. Bryant alleged that General Motors's actions permitted it to avoid paying millions of dollars in warranty claims. He further stated that, while General Motors recalled manual-transmission trucks with the defective parking brakes in 2005, the recall only involved about

60,000 vehicles and did not include the nearly 4,000,000 automatic-transmission vehicles owned by himself and the members of the class. For his causes of action, Bryant alleged the following: breach of express warranty, breach of implied warranty of merchantability, violation of the Magnuson-Moss Warranty Act, unjust enrichment, and fraudulent concealment/failure to disclose. Finally, Bryant sought damages "in an amount necessary to remedy the defective parking brakes[,]" or, alternatively, out-of-pocket money damages for those who had previously paid for repairs, or, alternatively, disgorgement and restitution. After a hearing on a motion for class certification filed by Bryant, the circuit court issued a fifty-one page order in which it concluded that Bryant had satisfied each of the requirements for class certification set forth in Ark. R. Civ. P. 23 and defined the class as follows:

> "Owners" or "subsequent owners" of 1999-2002 1500 Series pickups and utilities originally equipped with an automatic transmission and a PBR 210x30 Drum-in-Hat parking brake system utilizing a high-force spring clip retainer [footnote omitted], that registered his vehicle in any state in the United States.

General Motors now appeals, challenging the circuit court's findings as to predominance, superiority, and the class definition itself.

## I. Standard of Review

Rule 23 of the Arkansas Rules of Civil Procedure governs class actions and provides, in pertinent part:

> (a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties and their counsel will fairly and adequately protect the interests of the class.

> (b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other

available methods for the fair and efficient adjudication of the controversy. At an early practicable time after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. For purposes of this subdivision, "practicable" means reasonably capable of being accomplished. An order under this section may be altered or amended at any time before the court enters final judgment. An order certifying a class action must define the class and the class claims, issues, or defenses.

Ark. R. Civ. P. 23(a-b) (2007). Our law is well-settled that the six requirements for class-action certification include: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *See THE/FRE, Inc. v. Martin*, 349 Ark. 507, 78 S.W.3d 723 (2002). In reviewing an order granting class certification, we use the following standard for review:

> We begin by noting that it is well settled that this court will not reverse a circuit court's ruling on a class certification absent an abuse of discretion. *See, e.g., Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 78 S.W.3d 58 (2002). In reviewing a lower court's class certification order, "this court focuses on the evidence in the record to determine whether it supports the trial court's conclusion regarding certification." *Arkansas Blue Cross & Blue Shield*, 349 Ark. at 279, 78 S.W.3d at 64. We have held that "neither the trial court nor the appellate court may delve into the merits of the underlying claim in determining whether the elements of Rule 23 have been satisfied." *Id.* Our court has said on this point that "*a trial court may not consider whether the plaintiffs will ultimately prevail, or even whether they have a cause of action.*" *Id.* We, thus, view the propriety of a class action as a procedural question. *See id.*

*Carquest of Hot Springs, Inc. v. General Parts, Inc.*, 367 Ark. 218, 223, 238 S.W.3d 916, 919-20 (2006) (quoting *Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 613, 232 S.W.3d 444, 447-48 (2006) (emphasis added)).

## II. Predominance

### A. Choice of Law

General Motors initially argues that the significant variations among the fifty-one motor-vehicles product-defect laws defeat predominance and prevent certification in the instant case. It

contends that a choice-of-law analysis must be conducted prior to certification of the class and that the circuit court's failure to conduct such an analysis at this juncture permits due-process considerations to evade this court's review. Bryant responds that the circuit court correctly adhered to this court's precedent, which he claims does not require a rigorous choice-of-law analysis prior to class certification. He further contends that the circuit court's predominance finding should be affirmed as this court has previously recognized a circuit court's broad discretion to certify and manage a class action, which includes the circuit court's ability to conduct a choice-of-law analysis subsequent to class certification. General Motors replies that the elements of each of Bryant's claims must be examined so that the basic requirements of Rule 23 can be objectively determined.

Here, the circuit court provided four reasons for its finding that the potential application of multiple states' law did not create predominance concerns. First, the circuit court noted, the cases relied upon by General Motors were federal cases that required a "rigorous analysis" of Fed. R. Civ. P. 23's class-certification factors "including the impact state-law variations had on predominance." Because this court required no such rigorous analysis, the circuit court rejected General Motors's attempt to engraft such an analysis requirement into Ark. R. Civ. P. 23 and preferred, instead, to follow this court's precedent "in determining whether class certification [was] appropriate." Second, the circuit court found that Arkansas circuit courts have wide discretion to manage class actions and, pursuant to *Security Benefit Life Insurance Co. v. Graham*, 306 Ark. 39, 810 S.W.2d 943 (1991), the potential application of many states' laws was not germane to class certification. Instead, the circuit court opined, this court "viewed choice of law as a task for the trial court to undertake later in the course of exercising its autonomy and 'substantial powers' to manage the class action."

For its third reason, the circuit court found that there was "no greater merits-intensive determination than the one regarding choice of law." With that in mind, the circuit court stated, "[I]t would be premature for the Court, at this stage in the case, to make the call on choice of law." Finally, the circuit court observed, a decision to certify the matter as a class without resolution of the choice-of-law issue would not create incurable problems in that, if application of multiple states' laws was eventually required, and it

proved too cumbersome or problematic, the circuit court could always consider decertifying the class.

We cannot say that the circuit court abused its discretion in rejecting General Motors's argument on this issue as to predominance. We have held that the starting point in examining the issue of predominance is whether a common wrong has been alleged against the defendant. *See Chartone, Inc. v. Raglon*, 373 Ark. 275, 283 S.W.3d 576 (2008). If a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement of Rule 23 is satisfied even if the circuit court must subsequently determine individual damage issues in bifurcated proceedings. *See id.* We have recognized that a bifurcated process of certifying a class to resolve preliminary, common issues and then decertifying the class to resolve individual issues, such as damages, is consistent with Rule 23. *See id.* In addition, we have said that

> [t]he predominance element can be satisfied if the preliminary, common issues may be resolved before any individual issues. In making this determination, we do not merely compare the number of individual versus common claims. Instead, we must decide if the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings.

*Id.* at 286, 283 S.W.3d at 584 (quoting *Georgia-Pacific Corp. v. Carter*, 371 Ark. 295, 301, 265 S.W.3d 107, 111 (2007)). Our inquiry is whether there is a predominating question that can be answered before determining any individual issues.

We hold that there is. Whether or not the class vehicles contain a defectively designed parking-brake system and whether or not General Motors concealed that defect are predominating questions. That various states' laws may be required in determining the allegations of breach of express warranty, breach of implied warranty, a violation of the Magnuson–Moss Warranty Act, unjust enrichment, fraudulent concealment, damages, and restitution does not defeat predominance in the instant case.

We recently noted in *FirstPlus Home Loan Owner 1997-1 v. Bryant*, 372 Ark. 466, 277 S.W.3d 576 (2008), that the mere fact that choice of law may be involved in the case of some parties living in different states is not sufficient in and of itself to warrant a denial of class certification, citing our prior decision of *Security*

*Benefit Life Insurance Co. v. Graham, supra.* In *Security Benefit,* we observed that Security Benefit's main argument "appear[ed] to center on the fact that the law of thirty-nine states relative to novation would have to be explored and that this would splinter the class action into individual lawsuits." 306 Ark. at 44, 810 S.W.2d at 945. We rejected its argument, holding that "resolution of the common questions of law or fact would enhance efficiency for all parties, even if individual claims still remained to be adjudicated." *Id.,* 810 S.W.2d at 945. We then observed:

> The mere fact that choice of law may be involved in the case of some claimants living in different states is not sufficient in and of itself to warrant a denial of class certification. *Cf., Sun Oil Co. v. Wortman,* 486 U.S. 717 (1988). *And though we are not convinced at this stage that reference to the laws of thirty-nine states will be necessary, should it be required, this does not seem a particularly daunting or unmanageable task for the parties or for the trial court.*

> Because Arkansas is the home state for First Pyramid and because Arkansas law is the law to be applied under the Master Policy, it is the logical situs for this action. Actions in thirty-nine states, even with considerable joinder, would be inefficient, duplicative, and a drain on judicial resources. *Denial of class action status could well reduce the number of claims brought in this matter, but that result is hardly in the interest of substantial justice.*

*Id.* at 44-45, 810 S.W.2d at 945-46 (emphasis added).

Thus, we have suggested that multistate class actions are not per se problematic for Arkansas courts. A question of first impression still remains, however, as to whether an Arkansas circuit court must first conduct a choice-of-law analysis before certifying a multistate class action. In examining that question, we must keep in mind that we have been resolute that the circuit court is afforded broad discretion in matters regarding class certification. *See Chartone, Inc. v. Raglon, supra; Johnson's Sales Co., Inc. v. Harris,* 370 Ark. 387, 260 S.W.3d 273 (2007). In addition, we have held that "[t]he mere fact individual issues and defenses may be raised by the [defendant] regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing which must be resolved for all class members." *FirstPlus Home Loan Owner 1997-1,* 372 Ark. at 483, 277 S.W.3d at 589.

As already stated, there are clearly common questions concerning General Motors's alleged wrongdoing that will have to be

resolved for all class members, and we view any potential choice-of-law determination and application as being similar to a determination of individual issues, which cannot defeat certification. *See, e.g., THE/FRE, Inc. v. Martin, supra.* Other courts may disagree. *See, e.g., In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555 (E.D. Ark. 2005) (observing that when class certification is sought in a case based on common-law claims, the question of which law governs is crucial in making a class-certification decision); *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 926, 15 P.3d 1071, 1085, 103 Cal. Rptr. 2d 320, 335 (2001) (noting its favor in adopting the type of burdens articulated in federal decisions and holding that "a class action proponent must credibly demonstrate, through a thorough analysis of the applicable state laws, that state law variations will not swamp common issues and defeat predominance"); *Beegal v. Park West Gallery*, 394 N.J. Super. 98, 925 A.2d 684 (2007) (holding that a class-action motion court has a duty to conduct a choice-of-law analysis before deciding whether the predominance element is satisfied and that, although conflict-of-law issues do not per se foreclose certification of a multistate class, a thorough analysis of state laws is particularly important where a possibility exists that common issues could be subsumed by substantive conflicts in state laws; *but*, advising that a trial court should undertake a rigorous analysis to determine if the requirements of the class-certification rule have been met); *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 672 (Tex. 2004) (holding that "when ruling on motions for class certifications, trial courts must conduct an extensive choice-of-law analysis before they can determine predominance, superiority, cohesiveness, and even manageability"; *but*, also requiring that its courts perform a rigorous analysis before ruling on class certification to determine whether all prerequisites to certification have been met). However, those decisions do not bind this court, nor do they dictate that were we to permit a choice-of-law analysis after class certification, such a decision would be erroneous.

Moreover, we are simply not persuaded by the reasoning of these courts as we have previously rejected any requirement of a rigorous-analysis inquiry by our circuit courts. *See, e.g., Beverly Enters.-Arkansas, Inc. v. Thomas*, 370 Ark. 310, 259 S.W.3d 445 (2007). *See also Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997). Instead, we have given the circuit courts of our state broad discretion in determining whether the requirements for class certification have been met, recognizing the caveat that a class can always be decertified at a later date if necessary. *See,*

*e.g., Beverly Enters.-Arkansas v. Thomas, supra; Farmers Ins. Co., Inc. v. Snowden,* 366 Ark. 138, 233 S.W.3d 664 (2006); *Tay-Tay, Inc v. Young,* 349 Ark. 675, 80 S.W.3d 365 (2002). As our rule so clearly provides, "[a]n order under this section may be altered or amended at any time before the court enters final judgment." Ark. R. Civ. P. 23(b).

■   Indeed, it is possible that other states' laws might be applicable to the class members' claims. However, we cannot say that our class-action jurisprudence requires an Arkansas circuit court to engage in a choice-of-law analysis prior to certifying a class, as we have not hesitated to affirm a finding of predominance so long as a common issue to all class members predominated over individual issues. While General Motors argues that a failure to require such an analysis precertification allows that analysis to evade review, it is mistaken. Upon a final order by the circuit court, General Motors would be able to challenge the circuit court's choice of law, just as in any other case. *See, e.g., Ganey v. Kawasaki Motors Corp., U.S.A.,* 366 Ark. 238, 234 S.W.3d 838 (2006) (reviewing a circuit court's decision to apply Louisiana law in an appeal from an order of dismissal in a products-liability case). Moreover, were we to require the circuit court to conclude at this time precisely which law should be applied, such a decision could potentially stray into the merits of the action itself, which we have clearly stated shall not occur during the certification process. *See, e.g., Carquest of Hot Springs, Inc. v. General Parts, Inc., supra.* For these reasons, we cannot say that the circuit court abused its discretion in finding that the predominance requirement was not precluded by the potential application of other states' laws.

## b. *Factual Variations*

General Motors next asserts that many factual variations preclude a finding of predominance. It claims that the following questions are individualized and predominate over any common question: (1) does a class member's parking brake have a defect; (2) if a parking brake failed, how will causation be determined; (3) with regard to the alleged "cover up," what did General Motors know and when, and what did General Motors disclose and when; (4) was a parking brake repaired already under warranty and, if not, why not; (5) when did a class member's warranty expire; (6) did a class member first provide General Motors with notice of breach; (7) did a class member have knowledge about a potential parking-

brake problem at the time of purchase; (8) did a class member rely on General Motors's alleged misrepresentation; (9) were the alleged misrepresentations or omissions material to a class member; (10) for leased vehicles, is General Motors liable to the lessor or the lessee; (11) is a class member's claim barred by the statute of limitations; (12) is a class member's claim barred by various affirmative defenses, such as comparative negligence; and (13) what the appropriate remedy, if any, is for any particular class member. Bryant responds that the central common issues in the case can be decided first and that any potential individualized issue raised by General Motors can be dealt with after deciding the common predominating issues. General Motors replies, in essence, that where there are numerous individualized issues, they can be better resolved on a case-by-case basis.

We cannot say that the circuit court abused its discretion in its finding that factual variations did not preclude a finding of predominance. Here, the circuit court found that

> the alleged inadequate float problem appears to be something that is present in all class vehicles and which occurs each time a class vehicle is used. This is because all class vehicles utilize the PBR 210x30 Drum-in-Hat park brake system, and GM has admitted in numerous documents, with little to no equivocation, that the inadequate float problem regarding that brake system is a real one.

It further found that

> the presence of this common inadequate float problem negates GM's argument that there is no one set of operative facts that establishes liability, or no single proximate cause that equally applies to each potential class member. . . .

> 23. Even assuming *arguendo* the parking brake "failure" should, as GM says, be defined more broadly such that individual inspections for lining wear and/or consideration of individual use factors might be necessary, Rule 23(b) predominance still exists. The Court views any need for individual inspections and/or the individual use factors merely as individual determinations relating to right to recovery or damages that pale in comparison to the common issues surrounding GM's alleged defectively designed parking brake and cover up to avoid paying warranty claims. . . .

We have repeatedly recognized that conducting a trial on the common issue in a representative fashion can achieve judicial efficiency. *See Arkansas Blue Cross & Blue Shield v. Hicks, supra.*

Furthermore, we have routinely found the bifurcated process of class actions to be consistent with Rule 23(d), which allows the circuit court to enter orders necessary for the appropriate management of the class action. *See id.* In fact, we have expressed our approval for the bifurcated approach to the predominance element by allowing circuit courts to divide a case into two phases: (1) certification for resolution of the preliminary, common issues; and (2) decertification for the resolution of the individual issues. *See id.* The bifurcated approach has only been disallowed where the preliminary issues to be resolved were individual issues rather than common ones, *see id.*, which is not the situation in the instant case.

As already stated, the common issue that predominates here over any other potential issue is whether the parking-brake system installed in the class members' vehicles was defective and whether General Motors attempted to conceal any alleged defect. These overarching issues can be resolved before the circuit court reaches any of the individualized questions raised by General Motors. *See, e.g., Asbury Auto. Group, Inc. v. Palasack,* 366 Ark. 601, 237 S.W.3d 462 (2006). We have held that the mere fact that individual issues and defenses may be raised by the defendant regarding the recovery of individual class members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members. *See FirstPlus Home Loan Owner 1997-1 v. Bryant, supra.* Moreover, we have observed that challenges based on the statutes of limitations, fraudulent concealment, releases, causation, or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability. *See id.* (quoting *SEECO, Inc. v. Hales,* 330 Ark. 402, 413, 954 S.W.2d 234, 240 (1997) (quoting 1 Herbert B. Newberg, *Newberg on Class Actions* § 4.26, at 4-104 (3d ed. 1992))). Accordingly, we cannot say that the circuit court abused its discretion in its finding of predominance.

### III. Superiority

For its third point on appeal, General Motors contends that the circuit court erred in its finding on superiority. It urges that the superior method of handling a claim that particular vehicles are defective is by petition to the National Highway Traffic Safety Administration (NHTSA). It submits that a class action would be

unmanageable and unfair, arguing further that certification of the instant class would be unconstitutional, should bifurcation take place. Bryant responds that where the NHTSA has already denied relief to the proposed class members, NHTSA's process can in no way be superior to a class action. He further asserts that a class action would be manageable and fair and that, because it is not yet known whether bifurcation would be required, this court should not address General Motors's constitutional claim.

Rule 23(b) requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This court has repeatedly held that the superiority requirement is satisfied if class certification is the more efficient way of handling the case, and it is fair to both sides. *See Chartone, Inc. v. Raglon, supra.* Where a cohesive and manageable class exists, we have held that real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *See id.* This court has further stated that when a circuit court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the circuit court to evaluate the manageability of the class. *See id.* Furthermore, the avoidance of multiple suits lies at the heart of any class action. *See id.*

In the instant case, the circuit court concluded that a class was the superior method to resolve the claims of Bryant and the proposed class. With respect to manageability, the circuit court stated:

> 46. First, the Court does not believe for one moment that 4,000,000 individual, phase II trials will be conducted in this case. Among other things, potential opt outs and claims dismissed under a summary disposition procedure that can be developed will greatly reduce the number of potential phase II trials.

> 47. Second, *Lenders II* [358 Ark. 66, 186 S.W.3d 695 (2004)] concerned a class of 50,000 potential members and the Arkansas Supreme Court took no issue with it proceeding as a class action. [Citation omitted.] In the Court's view, the prospect of trying 50,000 cases is no different, from a manageability standpoint, than trying a potentially greater number of cases.

> 48. Third, the fact GM's allegedly defective design has adversely affected so many consumers is not Mr. Bryant's fault. Mr. Bryant

and the class should not be penalized for the widespread nature of GM's alleged defect and subsequent cover up. [Citation omitted.]

49. Finally, in at least the context of discussing class definition, the Arkansas Supreme Court has rejected lack of administrative feasibility as an excuse to avoid class certification. [Citation omitted.] The Court believes the Arkansas Supreme Court would similarly reject GM's similar argument that class size, alone, counsels against a finding of Rule 23(b) predominance.

With respect to the propriety of a class action versus the NHTSA, the circuit court found:

Moreover, as brought to light at the class certification hearing, the record reveals frustrated consumers have at least twice (most recently in mid 2006) petitioned NHTSA about the alleged parking brake defect in automatic transmission vehicles, and NHTSA rejected the petitions. Accordingly, the Court does not understand why GM believes NHTSA will provide a superior remedy to Mr. Bryant and class members. The Court concludes GM's NHTSA-based superiority argument has no merit. Mr. Bryant has established Rule 23(b) superiority.

Here, the proposed class of approximately 4,000,000 members makes it at least likely that without a class action, numerous meritorious claims might go unaddressed. We have held that to be a factor in determining superiority. *See, e.g., Lenders Title Co. v. Chandler,* 358 Ark. 66, 186 S.W.3d 695 (2004). In addition, the circuit court found that the uniform relief sought by Mr. Bryant and the class was relatively small if sought on an individual basis, and, thus, it was not economically feasible for members of the class to pursue General Motors on an individual basis. While not the sole basis for certifying the class, the smallness of the claims is another factor to be considered in deciding superiority. *See id.* It is evident that the circuit court thoroughly considered the manageability of the proposed class. For that reason, we cannot say that the circuit court abused its discretion in finding that the class was manageable. And again, as to manageability, this court has made it abundantly clear that a circuit court can always decertify a class should the action become too unwieldy. *See Tay-Tay, Inc. v. Young, supra.*

Nor can we say that a class action is not superior to having the matter addressed by the NHTSA. As noted by the circuit court, NHTSA has twice rejected petitions dealing with the

allegations made in the instant case. Clearly, resolution by that agency cannot be superior to a class action when the agency has made such a rejection. Moreover, it has been recognized that the Motor Vehicle Safety Act and NHTSA itself do not in any way preempt a plaintiff's right to bring common-law claims against the manufacturer of an allegedly defective part. *See, e.g., Chin v. Chrysler Corp.*, 182 F.R.D. 448 (D.N.J. 1998) (citing 49 U.S.C. § 30103); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332 (D.N.J. 1997) (citing 49 U.S.C. § 30103). *See also Amalgamated Workers Union of Virgin Islands v. Hess Oil Virgin Islands Corp.*, 478 F.2d 540, 543 (3d Cir. 1973) ("As we view it, it would appear that [Fed. R. Civ. P. 23(b)(3)]was not intended to weigh the superiority of a class action against possible administrative relief. The 'superiority requirement' was intended to refer to the preferability of adjudicating claims of multiple-parties in one judicial proceeding and in one forum, rather than forcing each plaintiff to proceed by separate suit, and possibly requiring a defendant to answer suits growing out of one incident in geographically separated courts."). With this in mind, we hold that the circuit court did not abuse its discretion in finding that a class-action suit was superior to resolution by the NHTSA.

Nor does the possibility of bifurcation render the instant class certification unconstitutional. As we have previously held, we do not know at the point of certification whether more than one jury would ultimately be necessary, and we will not speculate on the question of the inevitability of bifurcated trials or issue an advisory opinion on an issue that well may not develop. *See, e.g., BNL Equity Corp. v. Pearson*, 340 Ark. 351, 10 S.W.3d 838 (2000).

### IV. Class Definition

General Motors, for its final point, argues that the instant class definition is both overbroad and amorphous, arguing that the definition in no way distinguishes between "owners" and "subsequent owners" and that the class definition includes categories of individuals that have not been harmed in any fashion.[1] Bryant responds that the circuit court correctly determined that the class was subject to precise definition and was not overbroad.

---

[1] For example, General Motors suggests the following categories: "owners who have never had a problem, those who have already had a warranty repair, those who experienced a problem after the expiration of the warranty, those who chose never to seek the warranty

With respect to class definition, it is axiomatic that for a class to be certified, a class must exist. *See Asbury Auto. Group, Inc. v. Palasack, supra.* The definition of the class to be certified must first meet a standard that is not explicit in the text of Rule 23, that the class be susceptible to precise definition. *See id.* This is to ensure that the class is neither "amorphous" nor "imprecise." *See id.* Concurrently, the class representatives must be members of that class. *See id.* Thus, before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. *See id.* Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria. *See id.*

■ Here, the circuit court defined the class in a precise, objective manner. The class definition clearly states that the class includes any owner or subsequent owner of a 1999-2002 1500 Series pickup or utility vehicle that was originally equipped with an automatic transmission and the specified parking-brake system. Thus, the identity of the class members can be ascertained without an investigation into the merits of each individual's claim. *See, e.g., Lenders Title Co. v. Chandler, supra.* Moreover, the circuit court found that the terms "owners" and "subsequent owners" were terms taken from General Motors's own warranty publications and that General Motors admitted it had the ability to provide personal information regarding the original vehicle purchasers via its warranty database, as well as current vehicle owners via vehicle-identification-number searches conducted by third-party vendors. In addition, the circuit court further pointed to the fact that General Motors had previously conducted a recall on its manual-transmission version of the class vehicles, which demonstrated the administrative feasibility of General Motors's ability to not only identify class members, but also its ability to contact them. We simply cannot say that the class definition is in any way overbroad.

■ Nor do any individual issues among potential class members raised by General Motors render the definition imprecise. As already made clear, such issues cannot defeat class certifi-

---

repair, those who sold their vehicles before a problem occurred, those who acquired vehicles after a repair had already occurred, and those who experienced parking brake failures that were caused by something other than wear condition."

cation where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members. *See FirstPlus Home Loan Owner 1997-1 v. Bryant, supra.* We hold, therefore, that the class is identifiable from objective criteria, specifically, ownership of the specified vehicles so specifically equipped, and that the circuit court did not abuse its discretion in finding that the class definition was sufficiently precise.

For the foregoing reasons, we affirm the circuit court's order granting class certification.

Affirmed.

Special Justice LANE STROTHER joins.

CORBIN and IMBER, JJ., concur.

GUNTER, J., not participating.

A NNABELLE CLINTON IMBER, Justice, concurring. While I concur in the result on the facts presented by this case, I write separately because I believe the majority's analysis of General Motors's argument on the choice-of-law issue reaches a conclusion that is overbroad. The majority declares that addressing any choice-of-law argument at the class-certification stage goes beyond our required analysis of the elements of certification and is, therefore, never indicated. Such a declaration extends far past the holdings of our prior case law addressing class certification and forecloses analysis that could conceivably be required.

### Prior Case Law

The majority cites *FirstPlus Home Loan Owner 1997-1 v. Bryant*, 372 Ark. 466, 277 S.W.3d 576 (2008), and *Security Benefit Life Ins. Co. v. Graham*, 306 Ark. 39, 810 S.W.2d 943 (1991), and quotes them as holding the mere fact that choice-of-law may be involved in the case of some parties living in different states is not sufficient in and of itself to warrant a denial of class certification, and multi-state class actions are not per se problematic for our state's courts. From that holding, the majority then goes on to conclude that "*any* potential choice-of-law determination and application" is "similar to a determination of individual issues, which cannot defeat certification." (Emphasis added.)

In *Security Benefit Life Ins. Co. v. Graham*, 306 Ark. 39, 810 S.W.2d 943 (1991), owners of certain single-premium, deferred

annuities filed a complaint against an insurer, alleging breach of contract. The circuit court granted a motion for certification of a class of plaintiffs defined as all present owners of individual insurance certificates issued by the insurer under one certain master policy. *Id.* at 41, 810 S.W.2d at 944. The insurer appealed class certification, alleging, inter alia, that common issues of law did not predominate over individual issues because the certificate holders resided in thirty-nine states. *Id.* at 43, 810 S.W.2d at 945. We rejected the argument that application of the law of thirty-nine states relative to a defense of novation defeated the predominance element of class certification, concluding that a class action would resolve several common questions more efficiently than joinder of plaintiffs, and it did not "seem a particularly daunting or unmanageable task for the parties or the trial court" to apply the laws of multiple states to determine whether the insurer could avail itself of a defense of novation against the class members who resided in the respective states. *Id.* Thus, similar to the instant case, the choice-of-law issue presented in *Security Benefit* was related to plaintiffs' individual recoveries and corresponding defenses the defendant could maintain against those plaintiffs. We did not, however, conclude in *Security Benefit* that the circuit court was prohibited from considering any choice-of-law issues at the class-certification stage.

The majority also cites *THE/FRE, Inc. v. Martin*, 349 Ark. 507, 78 S.W.3d 723 (2002), for the proposition that "any potential choice-of-law determination and application [is] similar to a determination of individual issues, which cannot defeat certification." In *THE/FRE*, we affirmed the circuit court's grant of class certification against the appellants' assertion that issues related to recovery of individual class members and defenses that may be raised by the appellants predominated over common questions of law or fact. To the extent that choice-of-law issues in the instant case go to potential recovery of individual class members or potential defenses that GM may raise, I agree with the majority's reasoning. The circuit court in *THE/FRE*, however, did not consider any choice-of-law issues. Thus, I fail to see any logic or authority that will span the gap between our conclusion in the *THE/FRE* case and the majority's conclusion in the instant case. A conclusion here that choice-of-law issues not related to recovery or defenses will never predominate over common questions of law or fact is one that I find to be impermissibly overbroad.

### Rigorous Analysis

Next, the majority holds that a choice-of-law analysis is foreclosed at the class-certification stage because "we have previously rejected any requirement of a rigorous-analysis inquiry by our circuit courts." As support for this proposition, the majority cites federal court decisions, all of which hold that the trial court must conduct a "thorough" or "rigorous" analysis of the choice of governing state law before certifying a case as a class action. While it may be a necessary element of "thorough" or "rigorous" analysis in other jurisdictions that a court analyze applicable state laws as a prerequisite to class certification, the converse proposition — any consideration of choice-of-law issues at class certification stage amounts to a "thorough" and "rigorous" analysis — is not necessarily true. In fact, there may be circumstances where the trial court should undertake a choice-of-law analysis to enable us to conduct a meaningful review of the certification issue on appeal. *Lenders Title Co. v. Chandler*, 353 Ark. 339, 107 S.W.3d 157 (2003).

### Choice-of Law and Analysis on the Merits

Newberg specifically endorses choice-of-law considerations at the certification stage, but, at the same time, states that it is not permissible to go to the merits of the case upon deciding a motion for class certification. *Newberg on Class Actions* § 4.26 (3d ed. 1992). Thus, it is clear that Newberg does not equate a choice-of-law analysis with an impermissible examination of the merits of the plaintiff's claims. The majority cites *Carquest of Hot Springs, Inc. v. General Parts, Inc.*, 367 Ark. 218, 238 S.W.3d 916 (2006), for the proposition that requiring the circuit court to conclude at class certification which law should apply potentially strays into the merits of the action itself. In *Carquest*, the defendant/counter-claimant alleged that General Parts had engaged in an illegal tying arrangement and violated the Arkansas Franchise Practices Act. *Id.* at 220, 238, 238 S.W.3d at 917-18. The circuit court found that it did not have jurisdiction over Carquest's illegal-tying claim because that claim was based on the federal Sherman Anti-Trust Act, and in so finding, the court failed to consider whether the same claim could fall within the purview of the Arkansas Unfair Practices Act (AUPA). We held that discarding Carquest's AUPA claim amounted to a ruling that the state claim could not prevail, and that ruling constituted an impermissible consideration of the merits of Carquest's state claim. *Id.* at 224, 238 S.W.3d at 920. This holding does not support the majority's statement equating a

choice-of-law analysis with an examination of the merits of the case. Therefore, I believe the majority's contention that *Carquest* precludes choice-of-law considerations at the class-certification stage is flawed.

### GM's Choice-of-Law Argument

Here, Bryant's complaint includes claims of breach of express warranty, breach of implied warranty of merchantability, violation of the federal Magnuson-Moss Warranty Act, and fraudulent concealment of a product defect. General Motors argues that the circuit court erred in failing to consider the conflicts of laws present among the states in which GM has sold the trucks and SUVs alleged to have the parking brake defect. Before the hearing on class certification, GM presented the court with a thorough analysis of conflicts of laws regarding the state-law fraud claims, breach of warranty, applicable statutes of limitations, and unjust enrichment. It appears from a thorough reading of the circuit court's fifty-one page class certification order that the court in fact reviewed and considered GM's choice-of-law arguments, but, nevertheless, found that Bryant had satisfied the class-certification element of predominance. The circuit court went on to declare as a matter of law that our court has interpreted Rule 23 of the Arkansas Rules of Civil Procedure as precluding a choice-of-law analysis at the class-certification stage and stated without citation that "[i]n truth, there is no greater merits-intensive determination than the one regarding choice of law. Choice of law has everything to do with a case's merits."

The majority opinion ratifies the circuit court's declaration and thereby cuts off any future possibility that a conflict of laws could defeat a finding of predominance. With this I cannot agree.

### Class Certification Order

From my reading of the class certification order, I believe that the circuit court properly considered the conflict of laws argument GM presented to the court and found that the issues of law and fact common to the members of the class predominate over individual issues of law and fact. The court determined from the evidence presented at the class-certification hearing that Bryant alleges a product defect that is present at the time of manufacture on all of a set of vehicles defined in the class definition. Similarly, all class members received identical express warranties from GM, and all class members seek the same warranty remedies. Bryant presented extensive documentation of initial reports to GM

of a potential defect, GM's testing and verification of the alleged product defect, and procedures by which GM addressed the alleged defect with respect to vehicles equipped with manual transmissions, while at the same time electing not to address the alleged defect with respect to vehicles equipped with automatic transmissions. Specifically, the circuit court stated that it saw "nothing to convince it that this alleged defect is not present in all class vehicles, or that it doesn't occur or manifest itself each time a class vehicle is used." With respect to potential state-law variations, the vast majority relate to defenses raised by GM regarding the recovery of individual members, such as: application of statutes of limitations; fraud-related materiality and reliance; individual knowledge of parking brake defect; whether an individual's parking brake has been repaired under warranty; notice of warranty breach; expiration of factory warranty based on mileage; and comparative fault. The mere fact that individual issues and defenses may be raised by a company regarding the recovery of individual members cannot defeat a class certification where there are common questions concerning the defendant's alleged wrongdoing which must be resolved for all class members. *Lenders Title Co. v. Chandler, supra; Seeco Inc. v. Hales*, 330 Ark. 402, 954 S.W.2d. 234 (1997). Here, the circuit court concluded that the "individual determinations relating to recovery or damages . . . pale in comparison to the common issues surrounding GM's allegedly defectively designed parking brake and cover up to avoid paying warranty claims." Based on the circuit court's extensive review of the evidence and its thorough findings of fact and conclusions of law, it is clear that the circuit court acted within its discretion in certifying the class of plaintiffs as defined in the court's order.

For these reasons, I concur with the majority's opinion that the circuit court did not abuse its discretion in finding that Bryant has met the requirements of Rule 23; likewise, I would affirm the circuit court's order of class certification.

CORBIN, J., joins this concurrence.